May it please the Court, Mr. Schiff. May it please the Court, Jim Schiff on behalf of the plaintiff Tracie Kolar. This is a social security disability case in which the administrative law judge made several errors. We are asking this Court to reverse on three main issues. First, the ALJ's reliance on the lack of imaging studies to support Ms. Kolar's allegations of pain was erroneous. Second, the ALJ erred in rejecting the opinion of Dr. Jesse Park, Ms. Kolar's treating physician. And third, the ALJ erred in evaluating the treatment notes of Ms. Kolar's treating pain management physician, Dr. Ira Goodman. Ms. Kolar suffers from several impairments including fibromyalgia, cervical facet arthropathy, and myofascial pain syndrome. Prior to applying for disability, Ms. Kolar was employed as an accountant at Grant Thornton earning more than $50,000 per year. The bulk of the evidence in this case relates to Ms. Kolar's attempts at relieving her neck, upper back, shoulder, and headache pain. And to treat those conditions, she received an occipital nerve stimulator implant, a device used to treat chronic migraine headaches in patients who have failed to respond to pharmaceutical treatments. Ms. Kolar has received multiple treatments for her pain including narcotic pain medication such as Opana, cervical facet injections, trigger point injections, occipital nerve blocks, Botox injections, physical therapy, chiropractic treatments, and a radiofrequency lesioning at four levels of her cervical spine. And despite all these treatments, Ms. Kolar continued to report pain levels at seven to ten out of ten in severity, significant fatigue, loss of concentration, muscle spasms, and reduced range of motion. The AOJ found Ms. Kolar's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible because there was, quote, very little objective evidence supporting the severity and disabling effect of her pain. In particular, the AOJ discounted her allegations of pain based on the lack of imaging studies such as CT scans or MRIs. The AOJ's finding reflects a misunderstanding of the chronic pain conditions from which Ms. Kolar suffered, most notably fibromyalgia. Fibromyalgia is a disorder characterized by widespread musculoskeletal pain and cannot be confirmed by an MRI or CT scan. The AOJ treated this case as if Ms. Kolar alleged disability based on degenerative disc disease and not fibromyalgia. Fibromyalgia can be diagnosed through a tender point examination, and in this case Ms. Kolar exhibited 16 out of 18 possible tender points associated with fibromyalgia during an examination with a 90-90 American College of Rheumatology criteria. In Sarcevy-Chater, this court reversed and remanded the decision of an AOJ who discounted the severity of the claimant's fibromyalgia pain on the basis that she did not display swelling of the joints. But this court noted that swelling of the joints is not a symptom of fibromyalgia, and thus the AOJ's evaluation of the claimant's subjective allegations of pain was tainted by a misunderstanding of the disease. Similarly here, AOJ acknowledged some of the abnormal clinical findings that Ms. Kolar exhibited, but she failed to explain why those findings, such as reduced range of motion and tenderness, were less probative than imaging studies. AOJ also repeatedly characterized Ms. Kolar's treatment as conservative, while failing to acknowledge that conservative treatment is the appropriate method of treating fibromyalgia, and also what her doctors recommended. Even if the AOJ properly characterized Ms. Kolar's treatment as conservative, she failed to suggest any treatments that Ms. Kolar might have undertaken that would be expected of an individual suffering from fibromyalgia, in addition to the treatments that she did receive, including five types of injections, the occipital nerve stimulator, treatment with a rheumatologist and pain management physician, and five prescription pain medications. AOJ also disbelieved Ms. Kolar's allegations of disabling pain because she complained of the same symptoms and degree of pain during 2006, 2007, and 2008, as compared to the period after her alleged onset date of May 1st, 2008. However, the AOJ was mistaken in finding that work whatsoever in that year, and in 2007 and 2008, she worked for a temporary agency earning less than half of what she did at Granthorne before she ultimately stopped working. The Commissioner devotes considerable attention to this issue in her brief, but the AOJ's discussion of Ms. Kolar's work activity comprises one half of one sentence in her decision on whether she required extra breaks, excessive absences, and even the reasons for leaving the job, the AOJ's finding on this point is speculative. This Court has held in numerous cases, such as Goynes, Henderson, and Gisele, that work activity is not a sufficient ground for disbelieving the claimant's allegations of pain, as individuals often work beyond their physical capacity out of financial need. The AOJ also erred in affording little weight to the opinion of Ms. Kolar's treating physician, Dr. Jesse Park. The AOJ discounted Dr. Park's opinion because he, quote, failed to provide specific functional limitations and offered only a general conclusion of a finding reserved for the Commissioner of Social Security, but Dr. Park did provide specific functional limitations. He opined that work activities, such as bending, stooping, lifting, and reaching, performed even on an occasional basis, would aggravate Ms. Kolar's pain, and he also opined that Ms. Kolar would be absent from work more than three times per month, and those two elements of Dr. Park's opinion were not addressed by the AOJ in her decision. The AOJ also faulted Dr. Park for failing to detail the results of the objective measures that he listed in his opinion, but Dr. Park stated in his opinion that information regarding Ms. Kolar's treatment, her injections, her nerve blocks, and MRIs were available at the office of Ms. Kolar's treating pain management physician, Dr. Goodman. The AOJ further discounted Dr. Park's opinion because it was, quote, not consistent with a thorough examination of the consultative examining physician, and that is Dr. Tamaguri, but the AOJ did not explain in her decision how Dr. Park's opinion was inconsistent with that examination, and that examiner remarked that Ms. Kolar burst into tears during range of motion testing reportedly from pain, and we contend that that is completely consistent with Dr. Park's opinion that bending, stooping, and reaching aggravated Ms. Kolar's pain. Finally, the AOJ erred in selectively discussing the treatment notes of Dr. Goodman, Ms. Kolar's treating pain management physician, by focusing only on the evidence that supported her conclusion that Ms. Kolar was not disabled, and overlooking the evidence which supported Ms. Kolar's claim. The AOJ found that Ms. Kolar's examinations with Dr. Goodman generally revealed a normal gait, but on multiple occasions, Dr. Goodman and his physician's assistant, Ms. Lasky, noted that Ms. Kolar ambulated with either a slow gait or an intolerant gait, and those two types of gait could have an impact on the ability to perform sedentary work, as the AOJ found. There are no further questions. I'll save the remainder of my time for a button. Thank you. Thank you, counsel. Mr. Shepard. Eric Shepard, on behalf of the appellee, it's an honor for me to appear before this court. There are two main issues in this case, and the first and most important one is whether the AOJ reasonably found that a claimant who worked with a longstanding impairment for years, until May 1st, 2008, could continue working after May 1st, 2008, when she produced no evidence that her condition deteriorated at any time around May 1st, 2008. The second issue is whether a doctor's decision to base an opinion of disabling pain and limitations on unremarkable objective evidence discredits that opinion in general. The AOJ was brief but clear. The AOJ said that plaintiff complained of the same symptoms and degree of pain during 2006, 2007, and early 2008, during a period in which she worked full-time as she did following the alleged onset date of May 1, 2008. Appellant has come and said she didn't actually work in 2005 to 2007, but in fact, complainant herself, Kohler herself, noted, sent a submission to the agency, it's on page 188 of the record, saying that she had worked as a bookkeeper from 2005 to 2007 for six hours a day, four days a week, earning $20 an hour. The AOJ was permitted to rely on that statement. Now appellant also says that this is just a case about fibromyalgia, but it's not. When Kohler applied for disability benefits, she just said, complained generally of neck pain, head pain, back pain, and shoulder pain. Her doctor ascribed some of her limitations to problems in the neck. The AOJ was entitled to rely on objective evidence to discredit what could have been and these impairments that were present in the record. Moreover, if complainant were in the type of pain, if plaintiff were in the type of pain that she complained of, there would be physical signs, and those signs didn't show up in the exams as they should have of someone complaining of disabling pain. Now I would like to emphasize a point. For the first time, I would like to emphasize in the reply brief, at this court, Kohler brings up the issue that the AOJ should have asked Kohler about how she worked during 2006, 2007, and 2008. Kohler could have brought up this argument in the district court. He declined. She declined. She could have brought up this argument in the opening brief to this court. The AOJ made it clear that this was part of the reasoning. It was brief, but it was clear. Appellant declined. Appellant waited until the reply brief to this court to bring up this argument. That is unfair to us as litigants, as we didn't have a chance to submit a written brief and reply. In any event, this argument is without merit. We have case law in this circuit saying that if someone works with a longstanding impairment, that's good proof that they can work with that longstanding impairment. That is what is happening in this case. The record is clear. Her doctor consistently noted that she was working, despite these complaints of pain, despite all the fluctuations, during the period from 2005 all the way through May 1st, 2008. Just very briefly as well, Kohler brings up arguments about Chenery in the reply brief. There is a longstanding rule in this circuit that the AOJ does not have to mention every piece of evidence in the record. We are entitled, as the appellee, to mention and to explain why the evidence that Kohler points to is not important enough for the AOJ to mention in the decision. We can explain that and that wouldn't be a violation of Chenery. Moving on to Dr. Park's opinion. First of all, we would again like to emphasize that Kohler has waived the arguments that she has made against Dr. Park's opinion. In the district court, Kohler made one argument and one argument alone about Dr. Park's opinion, that the AOJ didn't fully compare it to Dr. Goodman's notes. In fact, in the district court, Kohler conceded that Dr. Tomigori's examination was consistent with Dr. Park's head in the district court, but that was just a small part of the record. Now, only in the appellate court does Kohler challenge the specifics of Dr. Park's opinion. Does Kohler nitpick at one aspect or another? Again, that sort of contradicts this court's longstanding precedent that we should give the district court an opportunity to rule on these issues and that appellants shouldn't change arguments when they come to this court. Again, the AOJ made clear in regards to Dr. Park's opinion why the AOJ didn't think it was credible. It was brief, but it was clear. The AOJ said that Dr. Park based the opinion on objective evidence. In fact, Dr. Park talked about disorders of the spine. He wrote the opinion on a, quote unquote, as the AOJ specifically said, a disorders of the spine questionnaire. It is perfectly valid then for the AOJ to say, well, this doctor is supporting evidence of extreme work preclusive limitations based on unremarkable objective evidence. There is no dispute in this case that as Dr. Kokecki said, the objective evidence, the labs, the EEGs, the MRIs of her spine was unremarkable. Finally, in regards to Dr. Park's opinion, it's important to note that the AOJ specifically took Dr. Park's opinion into account when formulating the RFC. Appellant talks about lots of aspects of Dr. Park's opinion, but the AOJ limited Kohler to a reduced range of sedentary work. Kohler has not explained how her impairments, how Dr. Park's opinions for the most part, except for his opinion that Kohler couldn't work, conflicted with the RFC that the AOJ determined. So in the end, this court has longstanding precedent that the best evidence that someone can work with their impairments is that someone worked with their impairments. In difficult cases like this, the court should defer to the AOJ's clear but brief statement that why it was a clear but brief statement that Kohler worked with these impairments. Kohler talks about X or Y that the AOJ didn't mention, didn't specifically mention, but in the end, that statement was clear, that Kohler worked with the impairments. The reasoning doesn't need to extrapolate on all the details in the record. Indeed, Kohler doesn't really point out any inaccuracies in the AOJ's decision. The AOJ mentioned facts about her gait, mentioned facts about the abnormal behavior, but came to the conclusion that all of these conditions started and were evident in the medical record while she worked, and that's the ultimate finding in this case, that she worked despite every single one of these conditions, of her complaints, and of her complaints of extreme pain, and that statement, while brief but clear, was a reasonable basis for the AOJ to determine that she could continue to work after May 1st, 2008, when she produced no evidence that her condition deteriorated around that time. Thank you, Counsel. Anything further, Mr. Schiff? Yes, Your Honor. Just briefly, Your Honors, the record is not clear about whether Ms. Kohler worked in the year 2006. There are no earnings from the year 2006. Now, the Commissioner is correct that there is a statement that Ms. Kohler submitted that indicated work activity from 2005 to 2007, but the year 2006 is specifically not addressed. The Commissioner is arguing that some of the arguments in our reply brief are presenting new legal theories, but that is not what we did. This Court has held that when the Commissioner raises a defense to the AOJ's decision in a response brief, the plaintiff is entitled to address this defense in her reply brief, and that was held in Chicago Truck Drivers v. Century Motor Freight. Only when a plaintiff presents a new legal theory in the reply brief, that's when a waiver is violated. Thank you, Your Honors. Thank you very much. The case is taken under